[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 14, 2011
JOHN LEY
CLERK

No. 10-14173
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-20210-PAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIO SANTIESTEBAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 14, 2011)

Before TJOFLAT, BARKETT and BLACK, Circuit Judges.

PER CURIAM:

Julio Santiesteban appeals his conviction and 15-month sentence for

encouraging or inducing an alien to come to the United States, in violation of 8

U.S.C. § 1324(a)(1)(A)(iv).  Santiesteban raises six arguments on appeal,

specifically that the district court: (1) should have granted his motion for a

judgment of acquittal, or in the alternative, motion for a new trial; (2) erred in

admitting, as expert testimony, Immigration and Customs Enforcement ("ICE")

Special Agent Matthew Parker's testimony as to the price aliens pay to be

smuggled into the United States; (3) erred in restricting his cross-examination of

Special Agent Parker; (4) should have given his requested cooperating witness

jury instruction; (5) erroneously applied a two-level special skill enhancement

under U.S.S.G. § 3B1.3; and (6) should have applied a three-level reduction under

U.S.S.G. § 2L1.1(b)(1) for committing the offense other than for profit.

## I.  SUFFICIENCY OF THE EVIDENCE

Santiesteban first argues that the district court erred in denying his motion

for a judgment of acquittal, or in the alternative, motion for a new trial because

there was insufficient evidence to support his conviction.[1]

To prove that a defendant violated 8 U.S.C. § 1324(a)(1)(A)(iv), "the

government must prove beyond a reasonable doubt that the defendant encouraged

or induced an alien to come to, enter, or reside in the United States, knowing or in

---

[1] We review challenges to the sufficiency of the evidence de novo.  *United States v. Williams*, 527 F.3d 1235, 1244 (11th Cir. 2008).  "We review the denial of a motion for a new trial for abuse of discretion." *United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir. 2005).

reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of the law." *United States v. Lopez*, 590 F.3d 1238, 1248 (11th Cir. 2009), *cert. denied*, 131 S.Ct. 413 (2010) (quotation marks and alterations omitted). A defendant may encourage or induce an alien by "helping" the alien come to the United States. *Id.* at 1251.

In reviewing the sufficiency of the evidence, we view "the evidence in the light most favorable to the government," and we will affirm a conviction "if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Williams*, 527 F.3d 1235, 1244 (11th Cir. 2008) (quotation marks omitted). In this case, there was sufficient evidence for a reasonable jury to find Santiesteban guilty beyond a reasonable doubt. The evidence showed that Santiesteban helped an alien, Andrew Davis, come to the United States from the Bahamas by driving Davis to Florida on his boat. As to the knowledge requirement of the statute, a reasonable jury could have found that Santiesteban knew or recklessly disregarded the fact that Davis could not legally enter the United States based on the fact that Santiesteban lied to the Coast Guard about the number of people who were onboard the boat, and told Davis to hide in the boat's cabin because of the Coast Guard.

Nor can we say that the district court abused its discretion in denying Santiesteban's motion for a new trial, because the evidence presented at trial did not preponderate against a guilty verdict. *See United States v. Hernandez*, 433 F.3d 1328, 1335 (11th Cir. 2005) (a district court may grant a motion for a new trial where "the evidence preponderates sufficiently heavily against the verdict [such] that a serious miscarriage of justice may have occurred.") (quotation marks omitted).

## II. EVIDENTIARY RULINGS

1. *Testimony of ICE Special Agent Matthew Parker*

Santiesteban next argues that the district court erred in admitting the testimony of ICE Special Agent Matthew Parker about the price illegal aliens pay to be smuggled into the United States, because Parker was not qualified to testify as an expert.[2] However, the record reflects that the district court did not make an express finding that Parker was testifying as an expert witness, but instead admitted Parker's testimony as lay opinion testimony based on his experiences as an ICE agent. We find that the district court did not abuse its discretion in admitting this evidence. Moreover, even if Parker's testimony should not have

---

[2] We review a district court's evidentiary rulings for an abuse of discretion and "will reverse only if the resulting error affected the defendant's substantial rights." *United States v. Tinoco*, 304 F.3d 1088, 1119 (11th Cir. 2002) (quotation marks omitted).

been admitted under Rule 701, Santiesteban fails to explain how he was harmed or prejudiced by this alleged error, and thus fails to establish that the testimony affected his substantial rights.

2.      *Cross examination of Special Agent Parker*

Santiesteban argues that the district court erred when it restricted his cross-examination of Special Agent Parker. We find no abuse of discretion. First, Santiesteban argues he should have been allowed to cross-examine Parker about inconsistent statements made by Davis to Parker. Before a party may impeach a witness using extrinsic evidence, however, "the court must be persuaded that the statements are indeed inconsistent." *United States v. Hale*, 422 U.S. 171, 176 (1975). Here, the district court did not err in finding that there were no inconsistent statements about which Santiesteban could impeach Davis through Parker's testimony.

Second, Santiesteban argues that the court should have allowed him to question Parker about his affidavit in support of the criminal complaint, because it contained Santiesteban's post-*Miranda* statements explaining the source of the money Santiesteban had in his possession at the time of his arrest. However, the district court found that Parker did not conduct or witness the post-*Miranda* interview described in the affidavit, and thus had no personal knowledge of

5

Santiesteban's alleged statements. Accordingly, the district court did not err in prohibiting Santiesteban from questioning Parker about those statements.

### III. JURY INSTRUCTIONS

Next, Santiesteban argues that the district court abused its discretion when it refused to instruct the jury that the testimony of a cooperating witness who has received a benefit for testifying should be considered with more caution than the testimony of other witnesses. According to Santiesteban, the district court should have given this instruction because Davis's credibility was at issue, and a reasonable jury could have concluded that he testified falsely because he was promised that he would not be prosecuted for illegal entry.[3]

On this record, we cannot say that the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense. As an initial matter, Davis testified that he was not being promised anything in exchange for his testimony in this case. Moreover, the district court instructed the jury about the credibility of witness testimony generally, including

---

[3] We review a district court's refusal to give a requested jury instruction for abuse of discretion, *United States v. Morris*, 20 F.3d 1111, 1114 (11th Cir. 1994), and will reverse a district court's refusal to give a requested instruction "only if (1) the requested instruction was substantially correct, (2) the requested instruction is not addressed in the charge actually given, and (3) the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense." *United States v. Shearer*, 794 F.2d 1545, 1551 (11th Cir. 1986) (quotation marks and alterations omitted).

that the jury should consider whether there was evidence tending to prove that a witness testified falsely. Finally, Santiesteban's counsel was able to call Davis's credibility into question during his cross-examination of Davis, and in closing arguments. Thus, the district court did not abuse its discretion in refusing to give Santiesteban's requested jury instruction.

## IV. SENTENCING

1. *Two-level enhancement under U.S.S.G. § 3B1.3*

As to sentencing, Santiesteban argues that the district court erred in applying a two-level enhancement under U.S.S.G. § 3B1.3 for the use of a "special skill[] in a manner that significantly facilitated the commission or concealment of the offense." He argues that no special skill was required to drive his boat from the Bahamas to Florida because it was a small pleasure boat, no license was required to drive it, and he was only traveling about 50 miles.[4]

A skill is "special" for the purposes of U.S.S.G. § 3B13 "[i]f an average person off the street does not possess the skill." *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1219 (11th Cir.) (quotation marks omitted), *cert. denied*,

---

[4] "The district court's legal interpretation of the term 'special skills' is reviewed *de novo*, but whether the defendant possesses a special skill under § 3B1.3 of the Sentencing Guidelines is a factual finding reviewed for clear error." *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1219 (11th Cir.), *cert. denied*, 131 S.Ct. 393 (2010).

131 S.Ct. 393 (2010). This Court held in *United States v. Calderon*, 127 F.3d 1314 (11th Cir. 1997) that "captaining a vessel on the high seas is the type of activity that requires skills not possessed by members of the general public and, therefore, requires 'special skills' within the meaning of section 3B1.3." *Id.* at 1339. Not only was Santiesteban captaining a vessel on the high seas, but he was doing so at night with one inoperable engine. On this record, we cannot say the district court clearly erred in concluding that Santiesteban used a "special skill" in the commission of the offense, and thus the court did not err in applying a two-level enhancement under U.S.S.G. § 3B1.3.

2.    *Three-level reduction under U.S.S.G. § 2L1.1(b)(1)*

Finally, Santiesteban argues that he should have received a three-level reduction under U.S.S.G. § 2L1.1(b)(1) because he did not commit the offense for profit.[5] In his post-arrest statement, Santiesteban stated that he had brought $1,200 to Bimini and, once there, a friend gave him $2,000 for boat parts that he had purchased from Santiesteban.

---

[5] A defendant receives a three-level reduction to his offense level where "the offense was committed other than for profit." U.S.S.G. § 2L1.1(b)(1). The defendant bears the burden of proving that this section applies to him. *United States v. Zaldivar*, 615 F.3d 1346, 1352 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 959 (2011).

On this record, we cannot say the district court clearly erred in refusing to apply a three-level reduction under U.S.S.G. § 2L1.1(b)(1).[6] The evidence at trial supported a finding that Davis paid $3,000 for his trip on Santiesteban's boat, and more than $3,000 was found in Santiesteban's wallet when it was inventoried following his arrest. Although Santiesteban presented another explanation for the money found in his wallet, the court was free to choose between the permissible explanations of the evidence, and the court did not err in believing the evidence presented at trial rather than Santiesteban's explanation. *See United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006) (holding that where there is "more than one permissible way to view the evidence concerning profit, the district court's choice between permissible views cannot be clear error.").

For the foregoing reasons, we affirm Santiesteban's conviction and sentence.

**AFFIRMED.**

---

[6] We review the findings of fact that support a sentence enhancement for clear error, and the application of the Sentencing Guidelines to those facts *de novo*. *United States v. Ndiaye*, 434 F.3d 1270, 1280 (11th Cir. 2006).